|   |   |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **DISTRICT OF NEVADA** |

ASHTON E. CACHO,

                Plaintiff,

v.

DR. JOHNS, *et al.,*

                Defendants.

3:16-cv-00201-MMD-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF Nos. 20, 21 (sealed)). Plaintiff opposed (ECF No. 26), and defendants replied (ECF No. 28). For the reasons stated below, the court recommends that defendant's motion for summary judgment (ECF No. 20) be granted.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ashton Cacho ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings this action against Dr. Romeo Aranas, Dr. Marsha Johns, and Dr. Richard Long (collectively "defendants").

The alleged events giving rise to plaintiff's claim are as follows. After falling from a top bunk while sleeping, plaintiff sustained injuries to his right shoulder. (ECF No. 1-1 at 4.) On March 15, 2015, plaintiff re-injured his shoulder after he slipped in the shower at Lovelock Correctional Center. (*Id.*) On June 23, 2015, plaintiff was transferred to NNCC for further examination of his right shoulder pursuant to the examining doctor's orders. (*Id.*)

While at NNCC, plaintiff alleges he "was repeatedly denied or delayed" treatment of his shoulder injury. (*Id.*) On October 7, 2015, Dr. Walls told plaintiff that due to this delay in

treatment, his injury was too old to effectively operate on. (*Id.*) Dr. Walls did not perform an x-ray or MRI on plaintiff's shoulder. (*Id.*)

Dr. Johns and Dr. Long repeatedly ordered MRIs for plaintiff, but then put other prisoners in plaintiff's place instead. (*Id.*) This delay has caused plaintiff extreme pain and has increased his risk of permanent disfigurement and disability. (*Id.*) Dr. Aranas has repeatedly approved and then cancelled Plaintiff's examinations. (*Id.* at 4-5.) When plaintiff asked Dr. Aranas about his delay in medical treatment, Dr. Aranas responded that plaintiff had an MRI and treatment scheduled on February 23, 2016. (*Id.* at 5.) However, plaintiff asserts that as of the date of this complaint, he has not had treatment or a consultation. (*Id.*) Dr. Johns, Dr. Long, and Dr. Aranas knew that plaintiff needed medical treatment, yet they repeatedly scheduled and cancelled plaintiff's appointments with no concern for plaintiff's continued pain and disability. (*Id.*) Plaintiff's treatment for his shoulder has been delayed for over a year. (*Id.* at 4.)

On November 1, 2016, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, allowing plaintiff to proceed with his Eighth Amendment deliberate indifference claim against defendants. (ECF No. 3 at 5.) Defendants now moves for summary judgment based on the following: 1) plaintiff failed to exhaust his administrative remedies; 2) defendants did not personally participate in the alleged deprivation; and 3) plaintiff has suffered no actionable injury or harm by any delay in the scheduling of his MRI. (ECF No. 20 at 6-11.)

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only

where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

#### A. Civil Rights Claims Under § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

#### B. Failure to Exhaust Administrative Remedies

##### 1. Exhaustion under the PLRA

Defendants argue that plaintiff did not properly exhaust available administrative remedies. (ECF No. 20 at 7-9.) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850,

1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendants bear the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendants make such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). When a remedy is essentially "unknowable" such that no reasonable inmate can make sense of what it demands, it is considered to be unavailable. *See Ross*, 136 S.Ct. at 1859-60.

### 2. NDOC's Inmate Grievance System

The procedural rules relevant to exhaustion "are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218. The grievance process at NDOC institutions is governed by Administrative Regulation ("AR") 740.

NDOC's grievance process features three levels, beginning with the informal grievance. If an inmate is unable to resolve the issue through discussion with an institutional caseworker, the inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims," or within ten days for any other issues, including classification and disciplinary. AR 740.04, 740.05(4). The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." *Id.* at

740.05(8). NDOC staff is required to respond within forty-five days. *Id.* at 740.05(12). An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. *Id.*

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." *Id.* at 740.06(2). The grievance is reviewed by an official of a higher level, who has forty-five days to respond. *Id.* at 740.06(1), (4). Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. *Id.* at 740.07(1). Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. *Id.* at 740.07(3), (4). Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### 3. **Exhaustion of Plaintiff's Claim regarding Treatment of Shoulder Injury**

Plaintiff's claim against defendants concerns an alleged delay in the treatment and scheduling of an MRI for his shoulder. (*See* ECF No. 1-1 at 4-5.) Defendants argue that plaintiff did not properly exhaust his available administrative remedies, as he failed to implicate the named defendants in his grievances. (ECF No. 20 at 8.) Specifically, defendants contend that plaintiff's grievance #2006-30-10820, filed on October 20, 2015, raised two issues: "(1) [plaintiff] 'disagreed' with Dr. Walls' refusal to recommend surgery and (2) he wanted an MRI." (*Id.*) Defendants assert that neither of these claims implicated defendants, as at that time plaintiff had not been seen by Dr. Johns, he has never been seen by Dr. Aranas, and he saw Dr. Long on July 8, 2015, where Dr. Long recommended plaintiff see Dr. Walls to discuss possible surgery. (*Id.*; *see also* ECF Nos. 20-9, 20-10, 20-11, 21-2.) Defendants claim that plaintiff did not make claims against the named defendants at the First and Second levels of grievance #2006-30-10820, but that plaintiff continues to complain that he wants a second opinion for surgery and that he wants an MRI. (ECF No. 20 at 9.) Defendants do acknowledge that plaintiff states at the Second level that he has "been seen by doctors Long, Walls, and Johns," but defendants assert that he did not complain about the care they provided, or that they had taken any harmful action towards him,

thus rendering his grievance as unexhausted as to his claim against defendants. (*Id.*) Finally, defendants assert that they were not responsible for scheduling plaintiff's MRI. (ECF Nos. 20 at 9, 20-9, 20-1, 20-11.)

Plaintiff does not address the issue of exhaustion in his opposition to defendants' motion for summary judgment, but instead argues that summary judgment should be denied so as to provide him with an opportunity to conduct discovery. (*See* ECF No. 26.)

The court has thoroughly reviewed the grievance (ECF No. 20-2), and finds that plaintiff properly exhausted his administrative remedies. The court disagrees with defendants' contention that because plaintiff did not specifically list defendants in his grievance, he failed to properly exhaust his administrative remedies. A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin*, 557 F.3d at 1120). The grievance "need not include legal terminology or legal theories" as its "primary purpose… is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.2d at 1120. Here, plaintiff's main contention is that treatment of his shoulder injury, including receiving an MRI, have been delayed. While plaintiff did not name defendants in his grievances, prison officials were put on notice of "the nature of the wrong for which redress [was] sought;" plaintiff wanted a MRI and he felt that his treatment was delayed. *Sapp*, 623 F.3d at 824. Thus, summary judgment on the issue of exhaustion is not warranted. Notwithstanding this, as discussed below, plaintiff's Eighth Amendment deliberate indifference claim necessarily fails.

C. **Eighth Amendment Deliberate Indifference**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal

quotation omitted).  It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims.  The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted).  First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."  *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted).  However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety."  *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004).  The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference.  *Colwell*, 763 F.3d at 1066.  An accidental or inadvertent failure to provide adequate care is not enough to impose liability.  *Estelle*, 429 U.S. at 105–06.  Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care."  *Id.* at 835 (internal quotation omitted).

1   As to the objective element of the deliberate indifference test, defendants do not dispute
2   that plaintiff's shoulder injury constituted a "serious medical need;" thus, this element has been
3   satisfied and the court will now address the subjective element.
4   As to the subjective element, plaintiff argues that defendants have been deliberately
5   indifferent to his shoulder injury, as they have refused to provide treatment and delayed scheduling
6   an MRI. (ECF No. 1-1 at 4-5.) Defendants argue that because they did not personally participate
7   in the alleged constitutional violation, they cannot be held liable under § 1983. (*See* ECF Nos. 20-
8   9, 20-1, 20-11.) Defendants assert they are not liable for any harm that resulted from any delay in
9   plaintiff obtaining his MRI. (ECF No. 20 at 10.) Further, defendants assert that plaintiff did not
10  suffer any harm due to the alleged delay. (*Id.*)
11  Plaintiff's claim that he had not received any treatment or MRI for his shoulder at the time
12  the complaint was filed, is untrue. Plaintiff's medical records reveal that plaintiff was provided a
13  number of medical examinations, X-rays, and medication between March 13, 2015 through as
14  recently as January 18, 2017. (*See* ECF Nos. 21-1, 21-2.) More importantly, plaintiff's medical
15  records reveal that plaintiff received an MRI on March 3, 2016 (ECF No. 21-1 at 3). Plaintiff filed
16  his complaint on April 12, 2016. (ECF No. 1-1.) Plaintiff's belief that he was entitled to swifter
17  treatment is not actionable under the Eighth Amendment, unless the delay in treatment resulted in
18  further harm. *See, e.g.*, *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d, 404, 407 (9th Cir.
19  1985). Plaintiff has provided no evidence to support such a finding.
20  It appears to the court that plaintiff disagrees with the treatment provided to him for his
21  shoulder injury. On April 4, 2016, Dr. Walls issued a report relating to the results of the MRI and
22  opined that surgery would not resolve plaintiff's "chronic diffuse shoulder ache," and further
23  stated that he offered plaintiff a cortisone shot, but plaintiff declined. (ECF No. 21-1 at 20.) On
24  January 18, 2017, Dr. Long injected plaintiff's shoulder with Xylocaine and Kenalog, resulting in
25  an "immediate relief of pain, over 80%." (ECF No. 21-2.) Prison officials are not deliberately
26  indifferent simply because they selected or prescribed a course of treatment different than the one
27  the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison official's
28

"'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found constitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096. Plaintiff provides no argument or evidence to support a finding that the doctors' chosen course of treatment, medical injections, was medically unacceptable. While plaintiff's MRI was ordered in October 2015 (ECF No. 21-1 at 28) and performed in March 2016 (*Id.* at 3), any delay did not cause plaintiff further harm. The purpose of the MRI was to "rule out cuff tear," (*Id.* at 28), and after receiving the MRI results, Dr. Walls opined that surgery would not resolve plaintiff's shoulder pain, but instead Dr. Walls offered cortisone shots to treat plaintiff's shoulder (*Id.* at 20). There is nothing in plaintiff's medical records that indicates further harm caused by a six-month delay in obtaining an MRI and plaintiff provides no such evidence.

In sum, the record before the court shows that contrary to plaintiff's assertions, he received thorough medical treatment and an MRI for his shoulder, and the record forecloses a reasonable jury from finding in plaintiff's favor as to any material fact relevant to the Eighth Amendment inquiry. Accordingly, defendants are entitled to summary judgment on this claim.

### IV.  CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' motion for summary judgment (ECF No. 20) be granted.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 20) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: August 9, 2017.

_____
**UNITED STATES MAGISTRATE JUDGE**